**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| **DEVIN M. HUDGINS**<br>**949 Wesley Road**<br>**Finksburg, MD 21048** | *<br><br>* | |
| *Plaintiff,* | * | |
| v. | * | Civil Action: 1:16-cv-3988 |
| **BANK OF AMERICA, N.A.**<br>**100 North Tryon Street**<br>**Charlotte, ND 28255** | *<br><br>* | |
| Serve on: | * | |
| **The Corporation Trust**<br>**Incorporated**<br>**351 West Camden Street**<br>**Baltimore, MD 21201** | *<br><br>*<br><br>* | |
| **and** | * | |
| **EARLY WARNING SERVICES, LLC**<br>**615 South Dupont Highway**<br>**Dover, DE 19901** | *<br><br>* | |
| Serve on: | * | |
| **National Corporate Research,**<br>**Ltd.**<br>**836 Park Ave., 2nd Floor**<br>**Baltimore, MD 21201** | *<br><br>*<br><br>* | |
| **and** | | |
| **CHEX SYSTEMS, INC.**<br>**7805 Hudson Road**<br>**Woodbury, MN 55125** | *<br>*<br><br>* | |

1

|  |  |
|---|---|
| **Serve on:** | * |
| **The Corporation Trust Incorporated** | * |
| **351 West Camden Street Baltimore, MD 21201,** | * |
|  | * |
| *Defendants.* |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Devin M. Hudgins, (hereafter the "Plaintiff") by counsel, and for his complaint against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2. Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning

individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6. Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, to wit:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of

a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.   To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9.   This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Devin M. Hudgins against Bank of America, N.A.; Early Warning Services, LLC ; and Chex Systems, Inc. for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein and asserts an additional claim against Bank of America, N.A. under common law.

## JURISDICTION

10.   The jurisdiction of this Court is conferred by 28 U.S.C. 1331, 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

11.   The Plaintiff is a natural person and resident of the State of Maryland. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12. Bank of America, N.A. (hereafter "Bank of America") is a national bank that is authorized to do business in the State of Maryland.

13. Early Warning Services, LLC (hereafter "Early Warning") is a limited liability company authorized to do business in the State of Maryland. Early Warning is a joint venture owned by the following entities, or their affiliates: Bank of America Corporation; Wells Fargo & Company; JP Morgan Chase & Co.; BB&T Corporation; and Capital One Financial Corporation.

14. Chex Systems, Inc. (hereafter "Chex Systems") is authorized to do business in the State of Maryland.

15. Early Warning and Chex Systems are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Early Warning and Chex Systems are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

16. Early Warning and Chex Systems disburse such consumer reports to third parties under contract for monetary compensation.

17. Bank of America, regularly furnishes information about consumers, including the Plaintiff, to Early Warning and Chex Systems.

**FACTUAL ALLEGATIONS**

18. On or about January 24, 2016, Mr. Hudgins submitted an online application for a Bank of America checking account and provided all information required of him to open an account.

19. On or about January 25, 2016, Bank of America e-mailed Mr. Hudgins stating that his application had been approved, and that he should receive the ATM or debit card requested within 5 to 7 days.

20. Bank of America e-mailed the Plaintiff an "Activity Alert" on January 26, 2016, stating that the debit card associated with his new account, Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774, had been placed in the mail, and should arrive in 5 to 7 days.

21. Mr. Hudgins never received the debit card associated with Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774.

22. On or about January 29, 2016, Bank of America e-mailed Mr. Hudgins a "Security Alert" indicating that Bank of America had detected unusual activity and directing Mr. Hudgins to immediately review the suspect activity through his online banking account.

23. Mr. Hudgins reviewed his online account information and learned that a $3,000.00 check had been deposited into the account, and that someone had attempted to withdraw money from the account at an ATM and purchase items at retail stores. The latter transactions were immediately denied.

24. Mr. Hudgins promptly notified Bank of America that the $3,000.00 check deposit and subsequent attempted transactions were fraudulent, and stated that he had never received the debit card associated with Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774, had not effected the deposit of a $3,000.00 check, and had not attempted to make any transactions with the debit card associated with Bank of

6

America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774.

25. Thereafter, Mr. Hudgins had several telephone conversations with Bank of America employees and made several visits to Bank of America branch offices requesting that the fraudulent $3,000.00 check be removed from his account.

26. Eventually, Bank of America closed Mr. Hudgins' account and refunded the initial deposit he made to open the account.

27. During August of 2016, Mr. Hudgins applied for a checking account with PNC Bank and was denied. PNC Bank advised that he review his Early Warning consumer report.

### A. The Bank of America Representation

28. Mr. Hudgins requested a copy of his consumer report from Early Warning, which he received on or about September 9, 2016. This report included a line stating that Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774 had been closed, and listing a "Contribution Reason" of "Transacting (or attempting to transact) with an account in an unauthorized or prohibited manner."

29. Mr. Hudgins also requested a copy of his Chex Systems consumer report, which he received on or about September 15, 2016. This report stated that Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774 was closed with a status of "UNPAID," and had notation stating, "SUSPECTED FRAUD ACTIVITY."

30. These representations (hereafter referred to as the "Bank of America representations") were false and misleading because Mr. Hudgins did not use the account to transact or attempt to transact in an unauthorized or prohibited manner and

7

there was no amount that remained unpaid and there had been no fraud activity on the part of Mr. Hudgins.

31. The Bank of America representations were also false and misleading because Plaintiff never received the debit card associated with Bank of America Account # ****-****-****-****-5774, and never engaged in any activity on the account beyond his initial deposit made for the purpose of opening the account.

32. The Bank of America representations are the only derogatory items on the Plaintiff's Early Warning and Chex Systems consumer reports.

### B. Early Warning Dispute

33. On or about September 15, 2016, Mr. Hudgins submitted a letter to Early Warning disputing the Bank of America representations because he had never effected any transaction with Bank of America Account # ****-****-****-****-5774.

34. On or about October 12, 2016, Bank of America mailed Mr. Hudgins a letter stating that it received notice of his dispute from Early Warning and had conducted a "detailed review" and concluded that Bank of America's reason for closing Bank of America Account # ****-****-****-****-5774 was valid, and that its decision to end the account relationship and begin reporting to Early Warning and Chex Systems would "remain in effect." Bank of America closed its brief letter by stating that it considered the matter closed.

35. On or about October 14, 2016, Early Warning mailed Mr. Hudgins a letter responding to his dispute, and stated that its investigation confirmed that its reporting of Bank of America Account # ****-****-****-****-5774 was accurate and complete.

8

36. On or about October 21, 2016, Mr. Hudgins submitted a second dispute to Early Warning, attaching a copy of the fraudulent check deposited into Bank of America Account # ****-****-****-****-5774 without his knowledge and a copy of his signed Identity Theft Report submitted to the Federal Trade Commission.

37. On or about October 27, 2016, Early Warning mailed Mr. Hudgins a letter responding to his second dispute of the Bank of America representation. Aside from the date, this letter is identical to the letter Early Warning sent in response to Mr. Hudgins' initial dispute.

38. Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Early Warning did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Bank of America representation.

39. In the alternative, it is alleged that Early Warning did forward some notice of the dispute to Bank of America and Bank of America failed to conduct a lawful investigation.

    C.    **Chex Systems Dispute**

40. On or about October 21, 2016, Mr. Hudgins submitted an online dispute to Chex Systems requesting that information relating to Bank of America Account # ****-****-****-****-5774 be removed from his report because the activity reported was a result of identity theft and attached a copy of his signed Identity Theft Report submitted to the Federal Trade Commission. Chex Systems returned an online notice stating that Mr. Hudgins' dispute had been received, and that if an investigation was necessary, that

he would receive the results in the mail within approximately 30 days.

41. On the same day, Chex Systems mailed Mr. Hudgins a letter stating that a security freeze had been placed on his consumer file.

42. Chex Systems has responded to Mr. Hudgins' dispute of its reporting of Bank of America# ****-****-****-****-5774 on or about November 17, 2016, stating that it had verified that the information it was reporting was accurate, and suggesting that he contact Bank of America's ID Fraud Department if he wished to dispute it directly. This letter also stated that Chex Systems would perform its own investigation if Mr. Hudgins sent it a "valid police report that fully supports your claim."

43. Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Chex Systems did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Bank of America representation.

44. In the alternative, it is alleged that Chex Systems did forward some notice of the dispute to Bank of America and Bank of America failed to conduct a lawful investigation.

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681e(b) BY EARLY WARNING AND CHEX SYSTEMS

45. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

46. A "consumer reporting agency" is defined by the FCRA as follows:

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

47. Early Warning and Chex Systems are each a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

48. Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681n(a)(l)-(3).

49. Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. *See* 15 U.S.C. § 1681*o*. Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681*o*(a)(l)-(2).

50. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).

51. Upon information and belief, Early Warning and Chex Systems do no

independent or further "investigation" of the substance of the consumer's dispute.

52. Moreover, the FCRA envisions the investigation process to involve both the CRA **and** the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. §1681i and § 1681s-2b, the consumer has greater protection that inaccurate information will be corrected as quickly as possible.

53. While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher **must** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681s-2b.

54. As described above, Early Warning and Chex Systems willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information they circulated about Plaintiff.

55. As a direct and proximate result of the failures of Early Warning and Chex Systems, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

56. As a direct and proximate result of the willful and/or negligent refusal of Early Warning and Chex Systems to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees

together with the costs of this action pursuant to 15 U.S.C. § 1681o.

57.     The continued refusal of Early Warning and Chex Systems to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiffs to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*(a)(2).

58.     Early Warning and Chex Systems violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681i BY EARLY WARNING AND CHEX SYSTEMS

59.     The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

60.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

61.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is

required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

62. The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681i(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." *See* 15 U.S.C. § 1681i(a)(3)(B).

63. Early Warning and Chex Systems violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Bank of America; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

64. Early Warning and Chex Systems willfully and/or negligently failed to conduct a reasonable investigation, of Plaintiff's dispute in violation of 15 U.S.C. § 1681i(a)(1).

65. Upon information and belief, at no point in its review of Plaintiff's dispute did Early Warning and Chex Systems make a determination that the dispute was frivolous or irrelevant.

66. Early Warning and Chex Systems certainly did not advise the Plaintiff that Plaintiff's dispute had been determined to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681i(a)(3)(B).

67. As a direct and proximate result of the refusal to conduct a reasonable investigation by Early Warning and Chex Systems, Plaintiff has suffered economic and noneconomic loss.

68. As a direct and proximate result of the refusal of Early Warning and Chex Systems, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

69. As a direct and proximate result of the willful and/or negligent refusal by Early Warning and Chex Systems to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

70. The continued refusal by Early Warning and Chex Systems to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by the Plaintiff is attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681n(a)(2).

## COUNT III

## DEFAMATION BY BANK OF AMERICA

71. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

72. On or about November 2, 2016, Mr. Hudgins mailed a dispute letter to Bank of America explaining that he had not engaged in any fraudulent activity with respect to Bank of America# \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774 and requesting that Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774 be removed from his record. Mr. Hudgins enclosed in this letter a copy of the fraudulent check deposited into Bank of America Account # \*\*\*\*-\*\*\*\*-\*\*\*\*-\*\*\*\*-5774, an enlarged color copy of his driver's license displaying his signature and photograph, and a signed copy of his Federal Trade Commission Identity Theft Report. Once Mr. Hudgins learned through Chex Systems that Bank of America verified its reporting a second time, he mailed, on or about November 17, 2016, an additional dispute letter via certified mail with a similar description and additional documentation supporting his dispute, which included an additional notarized Identity Theft Affidavit.

73. Thus, Bank of America had actual knowledge that the Bank of America representations were false.

74. Notwithstanding this actual knowledge, Bank of America made and repeated the Bank of America representations to Early Warning and Chex Systems.

75. The Bank of America representations were willful and made with malice. Bank of America had actual knowledge that the Plaintiff never received the ATM card

and never made the $3,000 deposit into the account and never attempted to make a withdrawal from the account.

76. Alternatively, Bank of America did not have any reasonable basis to believe the Bank of America representations and acted with a high degree of awareness of the probable falsity or had serious doubts about the veracity of the information it was reporting to Early Warning and Chex Systems.

77. As a result of this conduct, action and inaction of Bank of America, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial.

78. The defamation, conduct and actions of Bank of America were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Bank of America in an amount to be determined by the Court.

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1681s-2(b) BY BANK OF AMERICA

79. The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

80. Bank of America violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the Bank of America representations within Plaintiff's credit file with Early Warning and Chex Systems thereby rendering the reported information misleading; by failing to fully and properly investigate the

Plaintiff's dispute of the Bank of America representations; by failing to review all relevant information regarding same; by failing to accurately respond to Early Warning and Chex Systems; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Bank of America representation to the consumer reporting agencies.

81. As a result of this conduct, action and inaction of Bank of America, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial.

82. Bank of America's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

83. The Plaintiff is entitled to recover costs and attorney's fees from Bank of America in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, Devin M. Hudgins, respectfully prays for a judgment against Defendants as follows:

    a. Actual damages sustained in an amount in excess of $75,000.00 and statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

    b. Such amount of punitive damages as the Court may allow for

violations of the FCRA;

      c.      The costs of the action together with reasonable attorneys' fees as determined by the Court;

      d.      Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Devin M. Hudgins hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, punitive damages, attorney's fees and litigation costs.

Dated: December 14, 2016      Respectfully Submitted,

/s/ *E. David Hoskins*_____
E. David Hoskins, Esq. , No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
davidhoskins@hoskinslaw.com


/s/ *Doris N. Weil*_____
Doris N. Weil, Esq., No. 19679
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
dorisweil@hoskinslaw.com